IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MIMZI, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>SUBARU CORPORATION,<br><br>  Defendant. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Mimzi, LLC states for its Complaint against Defendant as follows:

**INTRODUCTION**

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

**PARTIES**

2. Plaintiff Mimzi, LLC is a limited liability company organized and existing under the laws of Alabama. Jim Geer, the inventor of the asserted patents, is the sole owner of Plaintiff.

3. On information and belief, Defendant Subaru Corporation is a company organized under the laws of Japan. Upon information and belief, Defendant does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

1

## JURISDICTION

4. This Court has subject matter jurisdiction over all causes of action set forth herein pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271 *et seq*.

5. This Court has personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, Defendant has, directly or through subsidiaries or intermediaries, committed acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint. Moreover, on information and belief, Defendant has purposefully and voluntarily placed its products into the stream of commerce with the expectation that they will be purchased and used by customers located in the State of Texas. On information and belief, Defendant's customers in the State of Texas have used Defendant's infringing products.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) because Defendant is a foreign corporation.

## Plaintiff's U.S. Patent No. 11,100,163

7. Plaintiff is the assignee of all right, title and interest in United States Patent No. 11,100,163, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '163 patent. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '163 patent by Defendant.

8. The '163 patent, which issued on August 24, 2021, is entitled, "Photographic

Memory." A true and correct copy of the '163 Patent is attached hereto as Exhibit A and incorporated herein by reference.

9. The claims of the '163 patent are directed to patent-eligible subject matter. For example, the claims of the '163 patent are directed to improvements to computing technology.

10. In September 2008, Google's then-Vice President of Search Products, Ms. Marissa Mayer, two months after the original application that led to the '163 patent was filed, made the following statements in a comment posted on Google's Official Blog, dated September 10, 2008, entitled "The future of search": "Search needs to be more mobile – it should be available and easy to use in cell phones and in cars and on handheld . . . You should be able to talk to a search engine in your voice. You should also be able to ask questions verbally or by typing them in as natural language expressions. . . . Maybe the search engines of the future will know where you are located . . . ." Exhibit B.

11. The claims of the '163 patent address these shortcomings in the art identified by Ms. Mayer, showing the unconventional nature of the steps and elements of the claims of the '163 patent. This is reflected in, for example, the following independent claims of the '163 patent:

> 1. A system for presenting location-based information to a mobile electronic device dependent on its location, comprising:
>
> a communication network interface port;
>
> a database system, configured to automatically store and retrieve location-based information for a traveler, the location-based information comprising location-based travel information and location-based advertisements; and
>
> at least one server having at least one automated processor, configured to:

automatically control access to the database system, to store and retrieve the location-based information;

automatically receive a location from a mobile electronic device;

automatically receive location-based information from the mobile electronic device;

automatically retrieve location-based travel information from the database system dependent on the received location of the mobile electronic device;

automatically retrieve a location-based advertisement from the database system dependent on at least the received location of the mobile electronic device and relevant to at least one spoken keyword; and

automatically present the retrieved location-based advertisement to a user of the mobile electronic device.

11. A method for presenting location-based information to a mobile electronic device dependent on its location, comprising:

providing a database system, for storing and retrieving location-based information for a traveler, the location-based information comprising location-based travel information and location-based advertisements;

receiving a location from a mobile electronic device with at least one server through a communication network interface port;

receiving location-based information from the mobile electronic device through the communication network interface port;

retrieving location-based travel information from the database system dependent on the received location of the mobile electronic device;

retrieving a location-based advertisement from the database system dependent on at least the received location of the mobile electronic device and relevant to at least one spoken keyword; and

presenting the retrieved location-based advertisement to a user of the mobile electronic device

presenting the retrieved location-based advertisement to a user of the mobile electronic device.

22. A computer readable medium storing, instructions therein for causing a programmable processor to present location-based information to a mobile electronic device dependent on its location, comprising:

instructions to cause a database system to store and retrieve location-based information for a traveler, the location-based information comprising location-based travel information and location-based advertisements;

instructions to receive a location from a mobile electronic device through a communication network interface;

instructions to receive location-based information from the mobile electronic device through the communication network interface;

instructions to retrieve location-based travel information from the database system dependent on the received location of the mobile electronic device;

instructions to retrieve a location-based advertisement from the database system dependent on at least the received location of the mobile electronic device and relevant to at least one spoken keyword; and

instructions to present the retrieved location-based advertisement to a user of the mobile electronic device.

12. Dependent claims of the '163 patent recite additional technological improvements, including overcoming the deficiencies in the art noted by Ms. Mayer. This includes, for example, claim 2, which recites "[t]he system according to claim 1, wherein the at least one server is further configured to retrieve the location-based advertisement from the database system dependent on at least the received location of the mobile electronic device and a prior communications from the mobile electronic device." Similarly, claim 12 recites, "The method according to claim 11, wherein the at least one server further retrieves the location-based advertisement from the database system dependent on at least the received location of the mobile electronic device and a prior history of communications from the mobile electronic device."

13. As another example, claim 7 recites, "The system according to claim 1, wherein

the transmitted location-based travel route information is configured to trigger a voice message to a user of the mobile electronic device." Similarly, claim 15 recites, "The method according to claim 11, wherein the transmitted location-based travel route information triggers a voice message to a user of the mobile electronic device."

14. As yet another example, claim 8 recites, "The system according to claim 1, wherein the transmitted location-based travel route information is configured to display a warning icon on a GPS map of the mobile electronic device." Similarly, claim 16 recites, "The method according to claim 11, wherein the transmitted location-based travel route information displays a warning icon on a GPS map of the mobile electronic device."

15. The prosecution history further demonstrates that the claims of the '163 patent are directed to patent-eligible subject matter. For example, during prosecution, the Examiner expressly considered the eligibility of the claims under 35 U.S.C. § 101, applying the USPTO's guidance regarding subject-matter eligibility based on the precedent of the United States Supreme Court. Exhibit C (January 2019 Revised Patent Subject Matter Eligibility Guidance and October 2019 Update).

16. In discussing eligibility, the applicant stated that "[n]one of the claims can possibl[y] be performed in the human mind. Each of the claims requires use of specific special purpose hardware, and not mere mental steps or general purpose tools." Jan. 29, 2021 Response to Office Action at 12. The applicant additionally stated that "the implementation requires interaction between multiple distinct special purpose devices, i.e., a database system with specific data types, and a server with specific functions, and thus even if the functions corresponding to the claim could be performed in the mind, which they cannot, the extrinsic

6

functions would require communication through a communication network interface port. As such, it is impossible for the claims to represent mere mental steps that can be performed in the human mind without assistance of external technology." *Id.* at 12-13.

17. Additionally, the applicant stated that "Similar to both McRO, Inc. v. Bandai Namco Games America Inc., 837 F.3d 1299, 1315, 120 USPQ2d 109 L 1102-103 (Fed. Cir. 2016) and Research Corporation Technologies Inc. v. Microsoft Corp., 627 F.3d 859, 97 USPQ2d 1274 (Fed. Cir. 2010), the present claims encompass elements that render the claims patent eligible. The claims are now directed to an automated location-dependent advertisement delivery system, which is further dependent on a spoken keyword. The technology improves the 'machine', by adding capability that was not present or not fully appreciated before. The invention is a practical application of the technology." *Id.* at 13.

18. The applicant further explained that, "Per the analysis of the Federal Circuit in DDR Holdings, the current claims are patent eligible because 'the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks', i.e., delivery of targeted advertisements to a mobile device in dependence on its location." *Id.* at 13-14.

19. The applicant further noted that, as in *Research Technologies*, "the present invention presents functional and palpable applications in the field of computer technology. These inventions address a need in the art for a location-based advertising technology, which is further targeted based on a spoken keyword." *Id.* at 16.

20. After the applicant provided the foregoing explanations regarding subject-matter eligibility, the Examiner allowed the claims.

21. The U.S. Patent & Trademark Office has stated that the duties of a Patent Examiner include the following:

- Reads and understands the invention set forth in the specification
- Determines whether the application is adequate to define the metes and bounds of the claimed invention
- Determines the scope of the claims
- Searches existing technology for claimed invention
- Determines patentability of the claimed invention

Exhibit D at 11, *The Role of the Patent Examiner*, Sue A. Purvis, Innovation and Outreach Coordinator, USPTO, available at https://www.uspto.gov/sites/default/files/about/offices/ous/04082013_StonyBrookU.pdf.

22. Thus, the Examiner who examined the '163 patent, in accordance with his duties, (1) read and understood the invention set forth in the specification; (2) determined whether the application was adequate to define the metes and bounds of the claimed invention; (3) determined the scope of the claims; (4) searched existing technology for the inventions recited in the claims of the application; and (5) determined the patentability of the claims.

23. The Examiner performed these duties in his role as "advocate/protector of [the] public interest with respect to intellectual property," which involves a "cooperative investigation between the Examiner and the Applicant, which ensures an Applicant receives a patent only for that which they are entitled to in accordance with Patent laws." *Id.* at 8-9.

24. Had the Examiner determined that the claims of the '163 patent merely recited well-understood, routine, or conventional components, he would not have allowed the claims over the art of record. The fact that the Examiner did allow the claims shows that he did not

determine that the claims of the '163 patent merely recited well-understood, routine, or conventional components.

## Plaintiff's U.S. Patent No. 9,792,361

25. Plaintiff is the assignee of all right, title and interest in United States Patent No. 9,792,361, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '361 patent. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the '361 patent by Defendant.

26. The '361 patent, which issued on October 17, 2017, is entitled, "Photographic Memory." A true and correct copy of the '361 patent is attached hereto as Exhibit E and incorporated herein by reference.

27. The claims of the '361 patent are directed to patent-eligible subject matter. For example, the claims of the '361 patent are directed to improvements to computing technology.

28. The '361 patent identifies a shortcoming in the art at the time of the invention. For example, the '361 patent states that "[i]f a mobile phone user sees a traffic jam, or a hazard in the road, such as a stalled vehicle, or a driver driving the wrong way on the Interstate, the mobile phone user should be able to send a spoken message, with speech-recognized text and location data, to a community searchable database, from which others can be instantly warned of the hazard, via text message, voice message, email, warning icon on the GPS map in their car or on their phone, digital signs on the road, etc." '361 patent at 1:64-2:5.

29. The claims recited in the '361 patent overcome this failing in the art. This includes, for example, the following independent claims of the '361 patent, which are directed to

new and useful configurations of components and describe improvements in computer capabilities by specifying a complex series of elements or steps performed by or through a mobile electronic device:

> 1. A computer implemented system for presenting social network provided outputs to a mobile electronic device dependent on a location, in response to the mobile electronic device user's input, comprising:
>
> a hardware data input port configured to receive information from the mobile electronic device user defining the user input;
>
> an automated hardware processor configured to define a user request dependent on the user input and metadata associated with the received information from the mobile electronic device user, comprising at least the location of the mobile electronic device determined by an automated hardware geospatial positioning system;
>
> an automated hardware communication interface port configured to: automatically transmit the user request to a social network database comprising a plurality of roadway condition records having time information and location information associated with respective roadway conditions;
>
> automatically receive location-dependent social network information from the social network database, selectively dependent on the transmitted user request; and
>
> communicate a message dependent on the received location-dependent social network information for creating a new record in the social network database, comprising time information and location information of a respective roadway condition;
>
> an automated hardware user interface configured to selectively present the received social network information ranked according to at least one social network ranking factor.
>
> 16. A computer implemented method for presenting social network-provided outputs to a mobile electronic device dependent on a location, in response to the mobile electronic device user's input, comprising:
>
> receiving information from the mobile electronic device user defining the user input through a hardware data input port;

automatically determining a location of the mobile electronic device by an automated hardware geospatial positioning system;

automatically defining a user request dependent on the user input and metadata associated with the received information from the mobile electronic device user with at least one automated hardware processor, comprising at least the automatically determined location of the mobile electronic device;

automatically transmitting the user request to an automated social network database comprising a plurality of records having location information, comprising a database of roadway condition records comprising a time and location associated with roadway conditions;

automatically receiving location-dependent social network information from the social network database through a hardware interface, selectively dependent on the transmitted user request; and

automatically communicating a message dependent on the received location-dependent social network information for creating a new record in the social network database comprising a time and location of a respective roadway condition;

automatically ranking the received social network information according to at least one social network ranking factor with at least one automated processor; and presenting the ranked received social network information through an automated hardware user machine interface.

18. A computer implemented system, comprising:
a hardware data input port configured to receive information from a human user of a wireless mobile electronic device defining a user input;

an automated system for determining a location of the mobile electronic device; and

at least one automated processor, configured to:

automatically define at least one new social network database record dependent on the user input, associated with at least a location, a time, and a rating of a roadway condition;

automatically transmit the at least one new social network database record through a wireless communication network to an Internet connected social network database comprising a plurality of roadway condition records, each comprising a time and a location of an associated roadway condition;

automatically define at least one social network database query dependent on the user input and the determined location of the wireless mobile electronic device; automatically receive social network database location-based records, selectively dependent on the transmitted social network database query dependent on the user input and the location; and

automatically present the received social network database location-based records ranked according to at least one social network ranking factor through an automated hardware user interface system of the mobile electronic device.

30. Dependent claims of the '361 patent are directed to still further new and useful configurations of components and describe improvements in computer capabilities. For example, claim 2 recites, "[t]he computer implemented system according to claim 1, wherein the received information comprises human speech, further comprising a speech to text converter, wherein the defined user input comprises a transcript of at least a portion of the human speech." As an additional example, claim 5 recites "[t]he computer implemented system according to claim 1, further comprising a speech recognition engine to translate speech into searchable words within the mobile electronic device."

31. As an additional example, claim 10 recites, "[t]he computer implemented system according to claim 1, wherein the received social network information is ranked according to a combination of ranking factors comprising a proximity of a location associated with a respective record and the location of the mobile electronic device."

32. As still another example, claim 11 recites, "[t]he computer implemented system according to claim 1, wherein the location of the mobile electronic device is determined by at least one of an automated geospatial positioning system and an automated cell phone tower triangulation system."

33. As yet another example, claim 15 recites, "[t]he computer implemented system

according to claim 1, wherein the automated hardware user interface is configured to present at least one location-dependent advertisement to the mobile electronic device user in dependence on at least the location."

34. The unconventional nature of these steps, alone or in combination, was confirmed in September 2008 by Google's then-Vice President of Search Products, Ms. Marissa Mayer, two months after the original application that led to the '361 patent was filed. In a comment posted on Google's Official Blog, dated September 10, 2008, entitled "The future of search." Ms. Mayer stated that "[s]earch needs to be more mobile – it should be available and easy to use in cell phones and in cars and on handheld . . . You should be able to talk to a search engine in your voice. You should also be able to ask questions verbally or by typing them in as natural language expressions. . . . Maybe the search engines of the future will know where you are located . . . ." Exhibit B.

35. The prosecution history further demonstrates that the claims of the '361 patent are directed to patent-eligible subject matter. For example, during prosecution, the Examiner expressly considered the eligibility of the claims under 35 U.S.C. § 101, applying the USPTO's guidance regarding subject-matter eligibility based on the precedent of the United States Supreme Court. *See* Exhibit F (USPTO 2014 Interim Eligibility Guidance and Examples 1-36). After considering the applicant's explanation that the claimed inventions were directed to patent-eligible subject matter, the Examiner indicated in a March 28, 2016 Advisory Action that the claims complied with 35 U.S.C. § 101.

36. The Examiner who examined the '361 patent, in accordance with the duties of a patent examiner, (1) read and understood the invention set forth in the specification; (2)

determined whether the application was adequate to define the metes and bounds of the claimed invention; (3) determined the scope of the claims; (4) searched existing technology for the inventions recited in the claims of the application; and (5) determined the patentability of the claims. The Examiner performed these duties in his role as "advocate/protector of [the] public interest with respect to intellectual property," which involves a "cooperative investigation between the Examiner and the Applicant, which ensures an Applicant receives a patent only for that which they are entitled to in accordance with Patent laws." Exhibit D at 11, 8-9.

37. Had the Examiner determined that the claims of the '361 patent merely recited well-understood, routine, or conventional components, he would not have allowed the claims over the art of record. The fact that the Examiner did allow the claims shows that he did not determine that the claims of the '361 patent merely recite well-understood, routine, or conventional components.

## COUNT ONE: INFRINGEMENT OF THE '163 PATENT

38. Plaintiff realleges and incorporates herein the preceding allegations of this Complaint as if fully set forth herein.

39. Defendant has in the past and continues to infringe one or more claims of the '163 patent, including at least claims 1, 3-8, and 10.

40. **Actual Knowledge of Infringement**. Plaintiff provided Defendant with notice of its infringement by letter dated October 20, 2023, which was received by Defendant on October 23, 2023.

41. **Induced Infringement**. Despite such actual knowledge, on information and belief, Defendant continues to sell products and distribute product literature and website

materials inducing end users and others to use its products in the customary and intended manner that infringes the '163 patent. A representative example of Defendant's infringing apparatuses, methods, and systems includes (but is not limited to) Defendant's Subaru vehicles equipped with CarPlay. A representative claim chart demonstrating Defendant's infringement of the '163 patent, either literally or under the doctrine of equivalents, is attached as Exhibit G. Plaintiff incorporates by reference the claim chart of Exhibit G into its allegations in this Complaint.

42. At least since its receipt of Plaintiff's October 23, 2023, letter, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '163 patent, literally or by the doctrine of equivalents, by selling the accused products to its customers and distributing product literature and website materials inducing end users and others to use their products in a manner that infringes one or more claims of the '163 patent.

43. Plaintiff has and continues to suffer damages as a direct and proximate result of Defendant's infringement of the '163 patent. Defendant's infringement since receiving notice of its infringement of the '163 patent has been willful.

44. Plaintiff has complied with any applicable marking and/or notice requirements of 35 U.S.C. § 287 such that Plaintiff is entitled to pre-suit damages.

45. Plaintiff is entitled to: (i) damages adequate to compensate for Defendant's infringement of the '163 patent, which amounts to, at a minimum, a reasonable royalty; (ii) attorneys' fees; (iii) costs; and (iv) enhanced damages because Defendant's infringement since receiving notice of its infringement has been willful.

**COUNT TWO: INFRINGEMENT OF THE '361 PATENT**

46. Plaintiff realleges and incorporates herein the preceding allegations of this

Complaint as if fully set forth herein.

47. Defendant has in the past and continues to infringe one or more claims of the '361 patent, including at least claims 1-3, 5, 7, 10, 11, and 12.

48. **Actual Knowledge of Infringement**. Plaintiff provided Defendant with notice of its infringement by letter dated October 20, 2023, which was received by Defendant on October 23, 2023.

49. **Induced Infringement**. Despite such actual knowledge, on information and belief, Defendant continues to sell products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '361 patent. A representative example of Defendant's infringing apparatuses, methods, and systems includes (but is not limited to) Defendant's Subaru vehicles equipped with CarPlay. A representative claim chart demonstrating Defendant's infringement of the '361 patent, either literally or under the doctrine of equivalents, is attached as Exhibit H. Plaintiff incorporates by reference the claim chart of Exhibit H into its allegations in this Complaint.

50. At least since its receipt of Plaintiff's October 23, 2023, letter, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '361 patent, literally or by the doctrine of equivalents, by selling the accused products to its customers and distributing product literature and website materials inducing end users and others to use their products in a manner that infringes one or more claims of the '361 patent.

51. Plaintiff has and continues to suffer damages as a direct and proximate result of Defendant's infringement of the '361 patent. Defendant's infringement since receiving notice of its infringement of the '361 patent has been willful.

52.     Plaintiff has complied with any applicable marking and/or notice requirements of 35 U.S.C. § 287 such that Plaintiff is entitled to pre-suit damages.

53.     Plaintiff is entitled to: (i) damages adequate to compensate for Defendant's infringement of the '361 patent, which amounts to, at a minimum, a reasonable royalty; (ii) attorneys' fees; (iii) costs; and (iv) enhanced damages because Defendant's infringement since receiving notice of its infringement has been willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

a.     Declaring that Defendant has infringed the '163 patent and the '361 patent;

b.     Damages in an amount to be determined at trial for Defendant's infringement, which amount cannot be less than a reasonable royalty, including enhanced damages for willful infringement, and an accounting of all infringing acts, including but not limited to those acts not presented at trial;

c.     Pre-judgment and post-judgment interest on the damages assessed pursuant to 35 U.S.C. § 284;

d.     That Defendant be ordered to pay all costs associated with this action pursuant to 35 U.S.C. § 284;

e.     That Defendant be ordered to pay Plaintiff's attorneys' fees pursuant to 35 U.S.C. § 285; and

f.     Such other and further relief, both at law and in equity, to which Plaintiff may be entitled and which the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues so triable.

THIS 4th day of June, 2025.

                Respectfully submitted,

                */s/ Cortney S. Alexander*
                Daniel A. Kent
                Telephone: 404.585.4214
                Email: dankent@kentrisley.com
                Cortney S. Alexander
                Telephone: 404-855-3867
                Email: cortneyalexander@kentrisley.com
                KENT & RISLEY LLC
                5755 N Point Parkway, Ste 57
                Alpharetta, Georgia 30022

                Attorneys for Plaintiff